PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN RAMÍREZ, Defendant and Appellant.

No. 6823.   Argued December 17, 1937.—Decided January 13, 1938.

*Burset & Pérez Pimentel* and *Manuel A. Bustelo* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The information in this case reads as follows:

"That the aforementioned Ramón Ramírez on one of the days of the month of October, 1936, in the municipality of Vieques, of the Judicial District of Humacao, P. R., illegally and voluntarily carried on his person a revolver, a weapon with which serious bodily injury may be caused and by the firing of which he killed Felipe Bermúdez (*a*) Toto."

The defendant appealed from a prison sentence of three months alleging as his only error that said judgment is not supported by the evidence and is against the evidence and the law.

We have examined the evidence. It establishes the following facts:

Insular Policeman Hermenegildo Maldonado testified that two or three days after the quarrel between the defendant and Felipe Bermúdez (*a*) Toto, in which the latter lost his life, the defendant handed him a revolver and told him that

he had taken it away from Bermúdez during the fight; that the defendant had a wound on his shoulder which looked as if it had been caused by a razor or something similar.

Agustín R. Quiñones, testified: that on the morning of the events he stood about 75 or 80 meters from where he heard some shots; that he ran toward the place remaining at a distance of about 20 or 25 meters and that from there he heard the defendant saying that Toto had shot himself with his own revolver while struggling with the defendant; that he believes that when the defendant said that, he was holding the revolver in his hand, but that he did not see the revolver because of the distance.

Eladio Pérez Rodríguez testified: that on the day in question the deceased known as Toto, arrived at the shop of the witness and asked that he be served a bottle of rum; that the rum was supplied to him and he drank it then and there with others; that thereafter he asked for another bottle and the witness gave it to him; that they, Maximino Ramírez, the witness and Ramón Ramírez, the defendant, remained at the store talking politics; that shortly after the defendant had left he heard a shot and opened the door and saw a horse on the highway on which Toto Bermúdez had been riding and two persons struggling on the ground; that he ran towards them and when he arrived at the spot where they lay in the side ditch the defendant was getting up from the ground with a revolver in his hand, and when he asked the defendant "what has happened" he answered: "This man tried to take my life with this revolver and when I struggled with him so as not to be killed a shot escaped and he is wounded. I am also wounded"; that the wounded person told him that he had been shot with his own revolver and that it was his gun which the defendant was carrying; that on arriving at the hospital the wounded one stated to two policemen that he had been wounded by his own revolver; that the following day the police came to the house of the defendant and the latter handed over the weapon; that when

the deceased visited his shop he saw the revolver in his bosom and that it was visible because he was in his shirt sleeves.

The defendant Ramón Ramírez testified that when he left the house of Eladio Pérez for his own house the deceased followed him on horseback, stopped him on the way and asked him where he was going and he answered that he was going to bed; that the deceased said to him "you are not the watch-man here" and kicked at him from where he was sitting on the horse; that he said to the deceased "listen, be quiet, don't try to knock me down" and then the other said: "Get out of here, I have a gun with which I will blow anybody's brains out"; that he kept on walking and the deceased followed him, jumped off the horse and said: "So you say you are going to bed"; that when he answered in the affirmative, the deceased replied: "Well, you are not going to bed now"; that when the deceased was about to make use of his revolver to shoot him he advanced forward, grabbed him by the belt, revolver and all, and when they were struggling a shot escaped; that the revolver involved in the incident belonged to the deceased and that he was carrying no weapon.

We agree with the appellant that the evidence for the prosecution is insufficient to support the information. The evidence offered by the People shows that the revolver which was seen in the hands of the defendant at the moment of the struggle with his adversary belonged to the latter, and that it was he who carried the weapon to the scene of the struggle.

■ The prosecuting attorney argued in the sense that even assuming that the revolver belonged to the deceased, the defendant illegally carried it from the place where the struggle took place to his house, where it was handed over some time later to the police. Even if we should accept that the defendant, after wounding and disarming his opponent, took the weapon to his house for the purpose of turning it over to the police and of proving that the weapon did not belong to him but to his opponent, that is not the voluntary and illegal carrying of a weapon to which the statute refers:

If the facts took place as they appear from the evidence of the prosecution, the defendant did not violate the statute when he took away and preserved, as evidence of his alleged legitimate defense, the weapon with which his opponent attempted to assault or deprive him of his life.

The judgment appealed from must be reversed and the defendant discharged.

Mr. Justice Hutchison and Mr. Justice Córdova Dávila took no part in the decision of this case.